Dear Mr. Roche:
In Attorney General Opinion 01-0450, this office was presented with the following scenario: a member of the Parochial Employees' Retirement System (PERS) obtains a divorce and property settlement agreement prior to his eligibility for benefits from PERS. This property settlement agreement orders PERS to pay the nonmember spouse a specified sum when the member spouse retires. Then, prior to retirement, his membership is merged from PERS to the Firefighters' Retirement System (FRS). The member then retires. The question was asked: does FRS have the authority to divide a member's benefits and pay a portion of such divided benefits to a third party payee based on an order that expressly applies to a different retirement system?
In response, it was the recommendation of this office that the domestic relations order clearly specify each plan to which such order applies. Our recommendation was based in large part upon the requirements of federal law, specifically, those provisions of the Retirement Equity Act of 1984 defining a domestic relations order as a qualified domestic relations order if the order meets the requirements of Section 414(p) of the U.S. Internal Revenue Code. We quote that portion of the statue herein:
 (p) Qualified domestic relations order defined. — For purposes of this subsection and section 401(a)(13) —
 (1) In general. —
 (A) Qualified domestic relations order. — The term "qualified domestic relations order" means a domestic relations order —
 (i) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and
 (ii) with respect to which the requirements of paragraphs (2) and (3) are met.
 (B) Domestic relations order. — The term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which —
 (i) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and
 (ii) is made pursuant to a State domestic relations law (including a community property law).
 (2) Order must clearly specify certain facts. — A domestic relations order meets the requirements of this paragraph only if such order clearly specifies
—
 (A) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
 (B) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
 (C) the number of payments or period to which such order applies, and
 (D) each plan to which such order applies.
 (3) Order may not alter amount, form, etc., of benefits. — A domestic relations order meets the requirements of this paragraph only if such order —
 (A) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,
 (B) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and
 (C) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.
 (4) Exception for certain payments made after earliest retirement age. —
 (A) In general. — A domestic relations order shall not be treated as failing to meet the requirements of subparagraph (A) of paragraph (3) solely because such order requires that payment of benefits be made to an alternate payee —
 (i) in the case of any payment before a participant has separated from service, on or after the date on which the participant attains (or would have attained) the earliest retirement age,
 (ii) as if the participant had retired on the date on which such payment is to begin under such order (but taking into account only the present value of the benefits actually accrued and not taking into account the present value of any employer subsidy for early retirement), and
 (iii) in any form in which such benefits may be paid under the plan to the participant (other than in the form of a joint and survivor annuity with respect to the alternate payee and his or her subsequent spouse).
 For purposes of clause (ii), the interest rate assumption used in determining the present value shall be the interest rate specified in the plan or, if no rate is specified, 5 percent.
 (B) Earliest retirement age. — For purposes of this paragraph, the term "earliest retirement age" means the earlier of —
 (i) the date on which the participant is entitled to a distribution under the plan, or
 (ii) the later of —
 (I) the date the participant attains age 50, or
 (II) the earliest date on which the participant could begin receiving benefits under the plan if the participant separated from service.
 (5) Treatment of former spouse as surviving spouse for purposes of determining survivor benefits. — To the extent provided in any qualified domestic relations order —
 (A) The former spouse of a participant shall be treated as a surviving spouse of such participant for purposes of sections 401(a)(11) and 417 (and any spouse of the participant shall not be treated as a spouse of the participant for such purposes), and
 (B) if married for at least 1 year, the surviving former spouse shall be treated as meeting the requirements of section 417(d).
 (6) Plan procedures with respect to orders. —
 (A) Notice and determination by administrator. — In the case of any domestic relations order received by a plan —
 (i) the plan administrator shall promptly notify the participant and each alternate payee of the receipt of such order and the plan's procedures for determining the qualified status of domestic relations orders, and
 (ii) within a reasonable period after receipt of such order, the plan administrator shall determine whether such order is a qualified domestic relations order and notify the participant and each alternate payee of such determination.
 (B) Plan to establish reasonable procedures. — Each plan shall establish reasonable procedures to determine the qualified status of domestic relations orders and to administer distributions under such qualified orders.
 (7) Procedures for period during which determination is being made. —
 (A) In general. — During any period in which the issue of whether a domestic relations order is a qualified domestic relations order is being determined (by the plan administrator, by a court of competent jurisdiction, or otherwise), the plan administrator shall separately account for the amounts (hereinafter in this paragraph referred to as the "segregated amounts") which would have been payable to the alternate payee during such period if the order had been determined to be a qualified domestic relations order.
 (B) Payment to alternate payee if order determined to be qualified domestic relations order. — If within the 18-month period described in subparagraph (E) the order (or modification thereof) is determined to be a qualified domestic relations order, the plan administrator shall pay the segregated amounts (including any interest thereon) to the person or persons entitled thereto.
 (C) Payment to plan participant in certain cases. — If within the 18-month period described in subparagraph (E) —
 (i) it is determined that the order is not a qualified domestic relations order, or
 (ii) the issue as to whether such order is a qualified domestic relations order is not resolved, then the plan administrator shall pay the segregated amounts (including any interest thereon) to the person or persons who would have been entitled to such amounts if there had been no order.
 (D) Subsequent determination or order to be applied prospectively only. — Any determination that an order is a qualified domestic relations order which is made after the close of the 18-month period described in subparagraph (E) shall be applied prospectively only.
 (E) Determination of 18-month period. — For purposes of this paragraph, the 18-month period described in this subparagraph is the 18-month period beginning with the date on which the first payment would be required to be made under the domestic relations order.
 (8) Alternate payee defined. — The term "alternate payee" means any spouse, former spouse, child or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant.
 (9) Subsection not to apply to plans to which section 401(a)(13) does not apply. — This subsection shall not apply to any plan to which section 401(a)(13) does not apply. For purposes of this title, except as provided in regulations, any distribution from an annuity contract under section 403(b) pursuant to a qualified domestic relations order shall be treated in the same manner as a distribution from a plan to which section 401(a)(13) applies.
 (10) Waiver of certain distribution requirements. — With respect to the requirements of subsections (a) and (k) of section 401, section 403(b), section 409(d), and section 457(d), a plan shall not be treated as failing to meet such requirements solely by reason of payments to an alternative payee pursuant to a qualified domestic relations order.
 (11) Application of rules to certain other plans. — For purposes of this title, a distribution or payment from a governmental plan (as defined in subsection (d)) or a church plan (as described in subsection (e)) or an eligible deferred compensation plan (within the meaning of section 457(b)) shall be treated as made pursuant to a qualified domestic relations order if it is made pursuant to a domestic relations order which meets the requirement of clause (i) of paragraph (1)(A).
 (12) Tax treatment of payments from a section 457 plan. — If a distribution or payment from an eligible deferred compensation plan described in section 457(b) is made pursuant to a qualified domestic relations order, rules similar to the rules of section 402(e)(1)(A) shall apply to such distribution or payment.
 (13) Consultation with the Secretary. — In prescribing regulations under this subsection and section 401(a)(13), the Secretary of Labor shall consult with the Secretary. (Emphasis added).
References to the federal definition of a qualified domestic relations order contained in 26 U.S.C. § 414(p) quoted above are made throughout our state public retirement and retirement benefits laws. See R.S. 11:1532 concerning the Clerks' of Court Retirement and Relief Fund entitled "direct rollover of eligible rollover distributions"; see R.S.11:1732 (11.1) concerning the Municipal Employees' Retirement System defining "distributee"; see R.S. 11:1930.3(C)(2) concerning the Parochial Employees' Retirement System defining "distributee"; see R.S.11:2180.3(C)(2) concerning the Sheriffs' Pension and Relief Fund defining "distributee".
In Opinion 01-0450, this court noted that the courts have liberally construed the criteria by which a domestic relations order will qualify as a QDRO. See Metropolitan Life Ins. Co. vs. Wheaton, 42 F.3d 1080
(U.S. 7th Cir. 1994). In Wheaton, the Seventh Circuit held that a divorce decree that failed to explicitly name the plan to which the order pertained and also failed to specify how the proceeds were to be divided between alternate payees nevertheless was sufficient to qualify as a QDRO, because there was no ambiguity as to how to dispense the proceeds of the ERISA plan.
It would appear that, according to Wheaton, supra, that the plan administrator is afforded discretion in the determination of the qualified status of a domestic relations order, despite the specificity requirements of 26 U.S.C. § 414(p) quoted above.
It remains our recommendation that the domestic relations order clearly specify each plan to which such order applies. Pursuant to R.S.9:2801[1], this may be accomplished by consent of the parties or an ex-parte order signed by the court issuing the original order which reflects the amendment.
We hope the foregoing is helpful to you. Should you have further questions in which we may provide assistance, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: __________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
Date Released: August 30, 2002
[1] R.S. 9:2801(B) provides:
B. Those provisions of a domestic relations order or other judgment which partitions retirement or other deferred work benefits between former spouses shall be considered interlocutory until the domestic relations order has been granted "qualified" status from the plan administrator and/or until the judgment has been approved by the appropriate federal or state authority as being in compliance with applicable laws. Amendments to this interlocutory judgment to conform to the provisions of the plan shall be made with the consent of the parties or following a contradictory hearing by the court which granted the interlocutory judgment. The court issuing the domestic relations order or judgment shall maintain continuing jurisdiction over the subject matter and the parties until final resolution.